IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL GOODRICH,<br>    Plaintiff, | CIVIL ACTION |
| v. | |
| TONELLI'S PIZZA PUB, and<br>RANDA ENTERPRISES, INC.,<br>    Defendants. | NO. 17-5728 |

DuBois, J.                               August 1, 2019

**M E M O R A N D U M**

## I.  INTRODUCTION

In this sex discrimination case, plaintiff Michael Goodrich alleges that defendants terminated his employment as a bartender on the basis of his sex and replaced him with a female bartender. The Complaint asserts sex discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 *et seq.* Presently before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, defendants' Motion is granted.

## II.  BACKGROUND

Plaintiff was hired by defendant Tonelli's Pizza Pub ("Tonelli's") in May 2012 to work full-time as a bartender. *See* Defs. SOF ¶¶ 11–12. Tonelli's is operated by defendant Randa Enterprises, Inc.[1] Defs. Mem. Mot. Summ. J. 1 n.1.

At all times during his employment at Tonelli's, plaintiff worked with between two and five other "main" bartenders, a group that included men and women and full-time and part-time employees. *See* Defs. SOF ¶¶ 13, 14. There was some turnover of the bartending staff during

---

[1] Defendants assert that "Tonelli's Pizza Pub" is a fictitious name used by defendant Randa Enterprises, Inc., to operate and is not a separate legal entity. Defs. Mem. Mot. Summ. J. 1 n.1.

plaintiff's employment. For example, two part-time male bartenders left Tonelli's during plaintiff's employment—Mike Rose left to get married and Jeff Clark left to move to Colorado. *See id.* ¶ 15. According to plaintiff, a female bartender, Jena Marshall, took over some of Clark's shifts after his departure. *See* Defs. Mot. Summ. J., Ex. A, Pl. Dep. 43:16–19. Plaintiff also testified that another male bartender was fired, and Tonelli's hired a female bartender to take his place. *Id.* at 42:14–43:13.

By the end of his employment with Tonelli's, plaintiff was one of two "primary bartenders" who typically evenly split twelve of the fourteen weekly bartender shifts. *See* Defs. SOF ¶ 16. The other "primary bartender" was Marshall. *Id.*

Plaintiff was terminated on June 29, 2015. Defs. SOF ¶ 1; Pl. Opp. Defs. SOF ¶ 1. He contends that he received a voicemail on that date from the Tonelli's General Manager, Larry Barksdale, stating that Tonelli's was "going in a different direction." Defs. SOF ¶ 84. Defendants assert that plaintiff had to be sent home from work early on June 29, 2015, "because of a bad attitude and difficulties with the staff," culminating in an argument with Barksdale in which plaintiff told Barksdale "to just fire him." *Id.* ¶ 87. According to defendants, plaintiff's behavior on that date was "the last straw after many previous instances of rude behavior and poor performance." *Id.* ¶ 88. Plaintiff summarily denies these allegations and states that he was never subject to "any written discipline" during his three years of employment. Pl. Opp. Defs. SOF ¶¶ 87–90.

Plaintiff applied for unemployment benefits on the day of his termination. Defs. SOF ¶ 1; Pl. Opp. Defs. SOF ¶ 1; Pl. Dep. 23:23–24:4. As the reason for his termination, plaintiff wrote "insubordination." Defs. SOF ¶ 1; Pl. Dep. 25:5–6. When asked about this description during his deposition, plaintiff testified, "The only thing they would accept was insubordination. I had

nothing to put down. I had to put something down." Pl. Dep. 25:5–7.

Plaintiff testified that about one week after his termination, he received a text message from Marshall, stating she had taken over plaintiff's shifts.[2] Defs. SOF ¶ 37. Plaintiff claims that Marshall "replaced" him. *See* Pl. Mem. Opp. Defs. Mot. Summ. J. ("Pl. Mem. Opp.") 6. Defendants maintain that after plaintiff's termination Dan Lineberger, a male, was trained to become a bartender and eventually took over many of plaintiff's shifts. *See* Defs. SOF ¶¶ 31, 60.

Plaintiff filed a claim of sex discrimination with the U.S. Equal Employment Opportunity Commission on August 5, 2015, based on the text from Marshall. *See* Pl. Dep. 53:10–25. Plaintiff testified that thereafter, on two separate occasions when he was interviewing with prospective employers—Nabrasa and Bar Louie—the interviewers told plaintiff that when they contacted Tonelli's for a reference for plaintiff, Tonelli's told the interviewer "[t]hat they were going with a new format and they didn't want men behind the bar anymore." *See id.* at 50:2–8. Defendants deny that Tonelli's had such a policy. Defs. SOF ¶ 24.

Plaintiff filed the Complaint on December 21, 2017, asserting sex discrimination claims under Title VII and the PHRA. On February 18, 2019, defendants filed the pending Motion for Summary Judgment (Document No. 11). Plaintiff responded to the Motion on March 18, 2019 (Document No. 12) and filed exhibits associated with his response on March 19, 2019 (Document No. 13). Defendants' Motion for Summary Judgment is thus ripe for decision.

## III.    LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v.*

---

[2] Plaintiff did not produce this text, because he did not "save" it. *See* Pl. Dep. 47:5–9.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

Plaintiff asserts that defendants terminated him because he is a male in violation of Title VII and the PHRA. *See* Pl. Mem. Opp. 4. Defendants maintain that plaintiff was fired for poor performance and rude behavior toward management, co-workers, and customers. Defs. Mem. Mot. Summ. J. 2–3.

Under Title VII and the PHRA, it is unlawful for an employer to "discharge any individual" on the basis of sex. *See* 42 U.S.C. § 2000e-2(a)(1); *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) ("[T]he PHRA is applied in accordance with Title VII."). When there is no direct evidence of discrimination, as in this case, courts apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. If plaintiff succeeds, the burden shifts to the employer,

4

who must articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Then, the burden shifts back to plaintiff to prove that the employer's proffered reasons are a pretext for discrimination. *Id.* at 804. The "plaintiff at all times bears the 'ultimate burden of persuasion.'" *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Defendants argue plaintiff has not met his burden of proof at the *prima facie* or pretext stages. *See* Defs. Mem. Mot. Summ. J. 11, 15. For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment.

### A. Prima Facie Case

To establish a *prima facie* case of sex discrimination, plaintiff must show that (1) he was a "member of a protected class"; (2) he was "qualified for the position"; (3) he "suffered an adverse employment action"; and (4) "members of the opposite sex were treated more favorably" or "the adverse employment action 'occurred under circumstances that could give rise to an inference of intentional discrimination.'" *See Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). Plaintiff must prove these elements by a preponderance of the evidence. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). "If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met her initial burden, and summary judgment is properly granted for the defendant." *See Burton*, 707 F.3d at 426.

Defendants concede "for the purposes of [their] motion" that the first three elements of plaintiff's *prima facie* case are met. Defs. Mem. Mot. Summ. J. 12. The Court thus turns to the fourth element: whether "members of the opposite sex were treated more favorably" or "the adverse employment action 'occurred under circumstances that could give rise to an inference of intentional discrimination.'" *See Burton*, 707 F.3d at 426 (quoting *Makky*, 541 F.3d at 214)). Plaintiff has produced no evidence that he was treated differently than similarly situated female

employees, so to survive summary judgment, plaintiff must adduce evidence that his termination occurred under circumstances giving rise to an inference of intentional discrimination. *See id.* Defendants argue that plaintiff has failed to do so. *See* Defs. Mem. Mot. Summ. J. 12.

Plaintiff argues that he has met his burden. Pl. Mem. Opp. 6. Specifically, he asserts that he was replaced by a female bartender, Marshall, and that this gives rise to an inference of sex discrimination.[3] *Id.* Furthermore, he maintains that interviewers at Nebrasa and Bar Louie told plaintiff that Tonelli's informed them it was "going with a new format" and "didn't want men behind the bar anymore." *See id.*; Pl. Dep. 50:2–8.

Defendants contend that plaintiff could not have been "replaced" by Marshall because she already worked there as a bartender at the time he was terminated. Defs. Mem. Mot. Summ. J. 5, 13. Defendants further argue that even if Marshall took over plaintiff's shifts, that would not be sufficient evidence of sex discrimination. *See id.* at 13.

The Court concludes that plaintiff has failed to establish a *prima facie* case of sex discrimination. Plaintiff's evidence that Marshall took over his shifts is weak, stemming from a single text from Marshall that he received one week after his termination and was unable to produce. *See* Pl. Dep. 46:17–47:9. Even if Marshall did take over plaintiff's shifts, this does not mean that she replaced him, much less give rise to an inference of sex discrimination. Indeed, plaintiff testified that he and Marshall were the two "primary" bartenders at the time he was terminated. *See id.* at 70:24–71:2. Plaintiff further testified that he did not know whether he was replaced by anyone or whether his shifts were "absorbed by the existing workforce." *Id.* at 113:20–24, 114:18–24. Moreover, plaintiff admitted he "had never been treated less favorably

---

[3] Earlier in the proceedings, plaintiff alleged that his former manager, Alison Rocks, replaced him. *See* Defs. SOF ¶ 45; Pl. Dep. 78:22–80:7. However, plaintiff admitted in his deposition that he had no "information . . . of any kind" that supported that allegation, and he does not argue that Rocks replaced him in his response in opposition to defendants' pending Motion. *See* Pl. Dep. 80:20–81:3.

as a man" at Tonelli's prior to his termination. *See id.* at 107:19–24. At best, plaintiff has shown that a female bartender employed at Tonelli's took over his shifts immediately after his termination until defendants could find a permanent replacement—not that plaintiff was terminated for being a man.

Plaintiff's uncorroborated testimony that interviewers at two bars told him that an unidentified Tonelli's employee said Tonelli's "didn't want men behind the bar anymore" is also insufficient to meet plaintiff's burden. *See id.* at 50:2–8. At the outset, the Court notes that this statement is hearsay which would be inadmissible at trial unless the declarants are called as witnesses. Nevertheless, assuming *arguendo* that plaintiff's statement is admissible in evidence, it is insufficient to give rise to an inference of sex discrimination. *See McLaughlin v. Diamond State Port Corp.*, No. 03-617, 2004 WL 3059543, at *11 (D. Del. Dec. 30, 2004) (concluding plaintiff's uncorroborated allegation that a supervisor stated "women should be at home having men pay their bills," without more evidence, was insufficient to establish *prima facie* case).

Furthermore, numerous facts counsel against an inference of discrimination. Plaintiff wrote "insubordination" as the reason for his termination on his unemployment benefits application—the same reason defendants proffer for his termination. *See* Pl. Dep. 25:5–6; Defs. SOF ¶ 1. His only explanation for why he wrote "insubordination" was, "I had nothing to put down. I had to put something down." *See* Pl. Dep. 25:6–7. Defendants also provide evidence, in the form of affidavits and payroll records, that another man, Lineberger, was ultimately promoted and trained to become a bartender and take over plaintiff's shifts. *See* Defs. Mem. Mot. Summ. J. 6; Defs. Mot., Ex. B., Payroll Records; Marshall Aff. ¶ 7; Randa Aff. ¶ 10; Barksdale Aff. ¶ 7.

Based on this record, no reasonable jury could find in plaintiff's favor.[4] Thus, plaintiff has not met his burden of establishing a *prima facie* case of sex discrimination.

**B. Pretext**

Furthermore, even if plaintiff met his burden at the *prima facie* stage, which the Court concludes he has not, plaintiff would fail at the pretext stage. To show pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Defendants argue plaintiff has not presented evidence from which a jury could reasonably conclude that its proffered reason for terminating plaintiff was pretextual. Defs. Mem. Mot. Summ. J. 15. Specifically, defendants assert that plaintiff was terminated because of a "bad attitude and poor performance," including being "rude and difficult with management, co-workers and customers." *Id.* at J. 2–3. Defendants contend that plaintiff's behavior culminated in a "final incident of rude behavior" to the general manager on his last day of work. *Id.* at 3, 14.

First, plaintiff presents no evidence from which a factfinder could disbelieve defendants' proffered reason for his termination. That plaintiff "enjoyed three years of employment" with defendants and "never had any serious discipline requiring memorialization" prior to his termination does not refute defendants' averment that plaintiff was rude to customers and insubordinate on the day of his termination. *See* Pl. Resp. 7. Furthermore, that General Manager Barksdale's voicemail only stated that defendants were "going in a different direction," does not

---

[4] Defendants argue that plaintiff testimony that, during his employment, several male bartenders left Tonelli's and were replaced by female bartenders is insufficient to support an inference of sex discrimination. *See* Defs. Mem. Mot. Summ. J. 13; Pl. Dep. 41:22–42:1. Plaintiff does not raise that argument in his response to defendants' Motion for Summary Judgment, so the Court need not address it.

8

render defendants' explanation a post hoc reason, as plaintiff avers. *See id.* In contrast, substantiating defendants' proffered explanation is the fact that plaintiff himself wrote "insubordination" as the reason for his termination on his unemployment benefits application. *See* Defs. SOF ¶ 1; Pl. Dep. 25:5–6.

Second, for the same reasons, stated *supra*, that plaintiff's evidence is insufficient to give rise to an inference of discrimination at the *prima facie* stage, plaintiff's evidence fails to support the argument that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *See Fuentes*, 32 F.3d at 764. No reasonable jury could conclude, based on this record, that defendant's articulated reason for plaintiff's termination was pretextual.

For these reasons, the Court concludes that plaintiff has failed to adduce sufficient evidence to support his Title VII and PHRA claims. The Court thus grants Defendants' Motion for Summary Judgment and enters judgment in favor of defendants Tonelli's Pizza Pub and Randa Enterprises, Inc., and against plaintiff, Michael Goodrich.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. Judgment is entered in favor of defendants and against plaintiff. An appropriate Order follows.